[No. F007653. Fifth Dist. Oct. 6, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL GILL, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

James Wm. Dirks, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HAMLIN, J.—Defendant appeals from his conviction on his guilty plea of committing a lewd and lascivious act with a child under age 14 (Pen. Code, § 288, subd. (a))[1] and the ensuing judgment sentencing him to prison for the aggravated term of 8 years. He challenges only his sentence, contending the trial court erred when it relied upon the provisions of newly enacted section 1170.71 in selecting the upper eight-year prison term. Additionally, he urges that the trial court abused its discretion in considering remarks of the victim's mother at sentencing and in failing to state adequate reasons for selecting the aggravated term. We find defendant's arguments unmeritorious and affirm the judgment.

## FACTS

In the afternoon of June 4, 1986, Deborah D., mother of 13-year-old Ashley P., returned to her home in Modesto. When she looked for defendant, her boyfriend, she could not find him or either of her two daughters in the kitchen or family room. She walked down the hallway and opened the bedroom door. There she saw defendant and her daughter Ashley, naked and lying on the floor. Defendant was leaning toward Ashley and had his hands on her shoulders. He said spontaneously, "Nothing happened." Deborah D. immediately called the police.

When a police officer arrived at the family home, Ashley told him defendant had dragged her into the bedroom, removed his clothes, and hers as well. He then lay on top of her, sticking his penis between her legs. He told her he was going to lie there for a while and then "stick it in." Ashley told the officer that defendant had lain on top of her for about five minutes without penetration before her mother found them. Later that evening, Deborah D. again contacted the police officer and reported finding in defendant's backpack names, addresses, telephone numbers, and physical descriptions of several of Ashley's friends. The latter included notations such

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

as "sexy," "sexy voice" and "nice bottom." Ashley told the officer that she did not give defendant any names or information about her friends.

Two days later, Deborah D. contacted the investigating officer to report finding additional items and learning more about defendant and his behavior. When the officer responded to that call, Deborah D. gave him photographs, magazines, and books depicting nude persons and containing sexual material. She also gave him a manila envelope containing three pairs of girls' panties and several condoms.

During the officer's second interview with Ashley, she told him defendant had on two occasions shown her photographs of himself in the nude. She also reported that defendant had read her stories from one of the books about family members having intercourse and had shown her Swinger and Playboy magazines with photos of people in the nude and of people performing sex acts.

DISCUSSSION

I. *Did the trial court err in applying section 1170.71 as an aggravating factor in this case?*

Defendant first contends the trial court erred when it relied upon the provisions of section 1170.71 in selecting the upper eight-year prison term. Assembly Bill No. 446 (1985-1986 Reg. Sess.) added section 1170.71 to the Penal Code. (Stats. 1985, ch. 165, § 1, p. 61.) It has not as yet been judicially construed.

Section 1170.71 provides: "The fact that a person who commits a violation of Section 288 has used obscene or harmful matter to induce, persuade, or encourage the minor to engage in a lewd or lascivious act *shall* be considered a circumstance in aggravation of the crime in imposing a term under subdivision (b) of Section 1170." (Italics added.)

This statute is mandatory, i.e., a trial court must consider as a factor in aggravation a defendant's use of obscene or harmful material to induce a minor to engage in lewd or lascivious conduct. Defendant here contends, however, that the time interval in his case between the act of molestation and the prior exhibition of harmful or obscene material to the

minor was too long to sustain an inference that the material was used to induce, persuade, or encourage the minor to engage in the proscribed conduct.

Because the statute is so recently enacted, almost no legislative history is available. A report of the Assembly Committee on Public Safety, prepared by Jeffrey P. Ruch, consultant, for a hearing on March 25, 1985, states that the bill as originally presented was intended to repeal the existing exemption for parents and guardians who show otherwise harmful material to their own children. In describing the purpose of the bill, the report indicates, "The sponsor of the bill, the San Bernardino County Sheriff's Office, has uncovered child molestation cases where explicit sexual depictions were used as 'a normalization factor to allay the child's fears concerning unnatural child-adult relations.'" Concluding that the bill as proposed was probably overbroad and thus unconstitutional, the author proposed as an alternative that "[i]n order to more precisely meet the author's purpose, the bill should target seductive use of explicit material by adults to lure children into lewd conduct." Ruch then proposed wording of Assembly Bill No. 446 identical to that ultimately adopted. The analysis provided to the Senate Committee on Judiciary adds nothing of significance to the Assembly analysis.

Obviously, an adult who seeks to lure a minor into engaging in a lewd or lascivious act by showing the minor obscene or harmful material at or near the time the prohibited conduct actually occurs falls within the ambit of section 1170.71. But the purpose of that section—to provide a means of increasing punishment for those persons who use harmful or obscene material to prepare a child for future molestation by making such conduct appear "normal" and to allay the child's fears about the wrongfulness or undesirability of such conduct—is inconsistent with a narrow interpretation of the statute. "Normalization" can be a prolonged process.

█ So long as the sentencing court can determine from the evidence before it that (1) the adult exhibited harmful or obscene material to the minor (2) for the purpose of inducing, persuading, or encouraging the minor to engage in lewd and lascivious acts, the court is mandated by section 1170.71 to consider such conduct an aggravating factor in selecting the proper term. However, it is essential there be a reasonable basis for concluding the obscene or harmful material was used for the proscribed purpose.

■     Testimony at the preliminary hearing established that defendant had been living in a "boyfriend-girlfriend" relationship with Deborah D. for approximately 14 months prior to the molestation. Besides defendant, Deborah, and Ashley, Ashley's younger sister and the mother's female roommate were also residents of the apartment. Ashley's mother described defendant as the head of the household.

The prosecution introduced nine Polaroid snapshots of defendant, in which defendant appeared naked and with an erection. Ashley testified defendant had shown her these photographs some two months after he moved in, telling her " 'This is how big I am when—when somebody touches me down there.' " Ashley understood he was referring to his penis. Defense counsel objected to introduction of the photographs as irrelevant, but this objection was overruled upon the prosecutor's explanation that he intended to show defendant had moved into the home "in order to get to Ashley," a fact which, if proven, would render defendant statutorily ineligible for probation pursuant to section 1203.066, subdivision (a)(3). Defendant put the pictures away after showing them to Ashley on this single occasion, and Ashley testified she did not see them again until after the molestation when her mother found the photographs behind the headboard of Ashley's bed. On cross-examination Ashley testified defendant had shown her these photographs twice and had offered them to her, an offer she declined.

The prosecution also introduced a book from which Ashley testified defendant had read to her "about the father doing it with the daughter and the mother doing it with the son and then the son doing it with the daughter." Ashley recognized the book when it was offered into evidence by the prosecutor; but when asked what she was referring to by "the father doing it with the daughter," Ashley responded "Doing the homework or —." The prosecutor asked Ashley if she knew the story had anything to do with sex, and she responded, "No." Both the photos and the book were received in evidence at the close of the prosecution's case.

Ashley had reported to investigating officers that defendant showed her magazines, Swinger and Playboy, with nude photographs and photographs of sex acts. Deborah D. had turned over to the officers eight Playboy centerfold pictures and some Swinger magazines, as well as two paperback books, Sexual Instincts of Adolescents and Human Sexuality, which she had found in the apartment. Although Deborah D. failed to testify at the preliminary hearing to any instance of defendant's use of such material to lure her daughter into lewd and lascivious conduct, she explained at

defendant's sentencing hearing she had earlier withheld much of this information on the advice of the prosecutor "not to tip our hat [*sic*]." Deborah D. confirmed Ashley had told her of defendant's use of the materials we have described.

At the preliminary hearing, Ashley testified that defendant showed her the sexual materials about one year before her mother interrupted defendant molesting her in the bedroom of the family apartment. The lapse of such a substantial period of time between the showing and the molestation is not necessarily determinative that section 1170.71 is inapplicable. The focus of the statute is not merely the effect of using such objectionable materials on the minor but rather the purpose of the use. Here there was substantial evidence before the trial court that defendant showed Ashley the sexual materials to influence her to engage in lewd and lascivious acts. No other reason for doing so was suggested by defendant or anyone else. Defendant's offer of at least some of the materials to Ashley, followed by his placing those materials under the headboard of her bed upon her refusal to accept them, is consistent with such a purpose. Defendant's volunteered comment to Ashley when he showed her the photographs of himself in the nude, i.e., "This is how big I am when—when somebody touches me down there," suggests his purpose was to encourage Ashley to touch him "down there" at that time or later. Similarly, the obscene phone calls to Ashley's young friends, that ceased upon defendant's arrest, also support a reasonable inference that defendant was pursuing a course of conduct designed to persuade or encourage minors to commit lewd and lascivious acts.

The absence of any overt manifestation by Ashley that the materials defendant showed her influenced her toward lewd and lascivious acts is marginally relevant, if relevant at all, on the question of defendant's purpose in showing Ashley the obscene materials. We do not mean to suggest, however, that the lapse of time between the use of the materials and the conduct proscribed by section 288, subdivision (a), may never be significant. The strength of an inference of the prohibited purpose that may be drawn from the act of exhibiting such materials to a 13 year old, followed by an act such as a voluntary and spontaneous deposit of such materials under the headboard of the minor's bed in this case, is weakened but not negated by the lapse of time between such acts and the molestation. Defendant's concurrent and later conduct may strengthen that inference.

We conclude that under all the facts before the trial judge at the time of sentencing, he did not abuse his discretion in inferring that defendant showed Ashley sexual material to encourage her to engage in lewd and

lascivious acts. Hence, he properly used section 1170.71 as a factor on which to impose the aggravated term.

### II., III.*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, P. J., and Martin, J., concurred.

A petition for a rehearing was denied November 4, 1987.

---

* See footnote, *ante,* page 410.